IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| **BARRY ANGELINE,** ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> **SECRETARY ALEJANDRO MAYORKAS.** ) <br> **U.S. DEPT. OF HOMELAND SECURITY,** ) <br> ) <br> *Defendant.* ) <br> ) <br> **Serve:** ) <br> ) <br> **OFFICE OF THE GENERAL COUNSEL** ) <br> **U.S. DEPT. OF HOMELAND SECURITY,** ) <br> **2707 Martin Luther King Jr. Ave SE** ) <br> **Washington, DC 20528-0485,** ) <br> *-Via Certified Mail* ) <br> ) <br> **U.S. ATTORNEY'S OFFICE FOR THE** ) <br> **DISTRICT OF COLUMBIA,** ) <br> **Attn:  Civil Process Clerk** ) <br> **U.S. Attorney's Office** ) <br> **555 4th Street NW** ) <br> **Washington, DC 20530,** ) <br> *-Via Certified Mail* ) <br> ) <br> **U.S. ATTORNEY GENERAL,** ) <br> **950 Pennsylvania Avenue, NW** ) <br> **Washington, DC 20530-0001,** ) <br> *-Via Certified Mail.* ) <br> ) | Case No.:_____ |

**CIVIL COMPLAINT FOR EQUITABLE
AND MONETARY RELIEF AND DEMAND FOR JURY**

Plaintiff Barry Angeline, by and through undersigned counsel, brings this complaint and demand for jury trial against Defendant Alejandro Mayorkas in his official capacity as Secretary of U.S. Department of Homeland Security ("DHS") for violations of Title VII of the Civil Rights

1

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

## JURSIDCTION AND VENUE

1. This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, as there is a federal question that arises under the laws of the United States, specifically 29 U.S.C. § 621 *et seq.*, and 42 U.S.C. § 2000e *et seq.*

2. This Court has personal jurisdiction over Defendant because Defendant's headquarters is located in the District of Columbia.

3. This Court has subject matter jurisdiction over this action as Plaintiff has administrative exhausted his administrative remedies pursuant to 41 U.S.C. § 4712(c)(2). Specifically, Plaintiff initiated a formal class complaint on or about April 1, 2020, which was later remanded by the EEOC to the Federal Emergency Management Agency ("FEMA") as an individual complaint on or about April 9, 2021, with a formal individual filing on or about April 8, 2022. FEMA procedurally dismissed Plaintiff's complaint on September 30, 2022. Plaintiff appealed the dismissal to the Office of Federal Operations, which affirmed dismissal on January 31, 2023.

4. Venue lies in this Court pursuant to 28 U.S.C. § 1391 because the unlawful employment practices alleged in this action took place in the District of Columbia as part of a continuous improvement contract managed by DHS and FEMA.

## PARTIES

5. Angeline is a resident of Virginia, and Defendant employed him from in or about July 2018 through on or about May 25, 2019.

6. Defendant DHS is a federal agency headquartered in Washington, D.C.

## ADMINISTRATIVE EXHAUSTION

7. Plaintiff initiated a formal class complaint on or about April 1, 2020, which was later remanded by the EEOC to FEMA as an individual complaint on or about April 9, 2021, with a formal individual filing on or about April 8, 2022. FEMA procedurally dismissed Plaintiff's complaint on September 30, 2022. Plaintiff appealed the dismissal to the Office of Federal Operations, which affirmed dismissal on January 31, 2023.

## FACTUAL ALLEGATIONS

8. In or about May 2018, FEMA executed a $10,000,000 continuous process improvement contract to support hurricane recovery in Puerto Rico. The contract, HSFE80-16-A-0004, task order 70FB8018F00000070, selected as the prime contractor ATCS PLC.

9. ATCS PLC contracted several sub-contractors, including Novaces LLC and Cyberricade LLC, to fulfill the process improvement contract and comprise a team of experts to provide training and advice on the Lean Six Sigma ("LSS") process.

10. All contractors and sub-contractors reported to the FEMA Continuous Improvement Program ("CIP").

11. Initially, the CIP was led by Luis Olivares, but in or about August 2018, Olivares was terminated.

12. Eli Pushkarewicz took over as manager of the CIP, despite a complete lack of practical or technical expertise in process improvement methodology.

13. Throughout Pushkarewicz's tenure, regular references were made to the LSS team as "the old guys," "washed up team of old guys," and the "straight, old, white guys."

14. In or about September 2018 Tim McCormick, Senior Vice President of ATCS, asked if the LSS team could recruit a "gay or transgendered consultant with the needed LSS

credentials" to assuage Pushkarewicz's bias against the LSS team.

15. In or about November 2018, Pushkarewicz and FEMA demanded the LSS team turn over intellectual property in a manner that Angeline believed violated the Anti-Deficiency Act.

16. During the period of August to November 2018, and after, Pushkarewicz made several publicly available social media posts denigrating and discriminating against straight white men.

17. In or about November 2018, Pushkarewicz was demobilized as CIP Manager and was replaced by Dawn Dickerson; Dickerson was then replaced by Desiree (last name unknown), and Desiree was then replaced by Tamaris Aldarondo.

18. Pushkarewicz, Dickerson, and Desiree were all transgender or gay, lacked any relevant professional experience or academic credentials, were not local hires, and did not have extensive FEMA experience.

19. The selections of Pushkarewicz, Dickerson, and Desiree were made over Evelyn Santiago, Sandra Gonzalez, or Brenda Dorta, each of whom were local hires and possessed academic and professional credentials relevant to process improvement and management experience.

20. Tamaris Aldarondo was a local hire of FEMA in Puerto Rico with no continuous improvement process experience, such as the LSS strategies she was assigned to supervise. Despite this, she was assigned as the Contracting Officer's Representative ("COR") for the LSS contract.

21. It is unclear whether Aldarondo received any training on acting as a COR, because she would refuse to answer when asked.

22.     Aldarondo would often speak in Spanish to others in the presence of the LSS team and refer to the LSS team as "the old white guys," and tell others "Don't pay attention to the white guys; they have no credibility."

23.     In or about December 2018, Aldarondo was selected to attend the first LSS Black Belt training course in support of the disaster recovery operations.

24.     The premise of this training was to provide Puerto Rico with a sustainable LSS program. The Black Belt certification generally requires 1-3 months of preparation. In the FEMA-specific LSS program, Black Belt training consists of a four-month program with five days of class per month. The program consists of a theoretical element and a practical element, requiring work in both theoretical and practical matters. The Black Belt training requires trainees complete two projects with signed affidavits, or complete two rapid improvement events with a signed affidavit.

25.     Aldarondo would often be seen during training working on assignments for other education.

26.     During the third week of training, Aldarondo reported she was unable to attend the full week due to mid-terms in her law school program.

27.     The LSS team offered Aldarondo three remedial training sessions of two hours each in order to catch her up for the missing week.

28.     Despite this offer of remedial training, Aldarondo missed seven days of training over the first three weeks and did not attend any of the additional training events.

29.     Aldarondo made no progress on her projects despite numerous attempts to assist, and even tried to have a colleague complete her project for her.

30.     Aldarondo attempted at the end of the training to postpone taking the final

evaluation by several months.

31. The FEMA CIP controlled significant elements of the LSS' work.

32. Aldarondo attempted to alter the LSS training program and conducted secret performance evaluations.

33. Between October 2018 and March 2019, the LSS team was required by the CIP to change their work in such particularity as to have the CIP dictate text color and font, slide organization, the template of weekly reports, and similar minutia.

34. On or about May 17, 2019, Angeline emailed Aldarondo informing her of the LSS team filing an EEO complaint made to ATCS regarding the discriminatory comments made by FEMA employees directed towards the LSS team.

35. The day prior to Angeline sending this email, senior ATCS officials were conducting a site visit in San Juan. Three days later ATCS and FEMA worked quickly to modify the statement of work that had been noncompliant since the previous October.

36. On or about May 25, 2019, Angeline was suddenly and unexpectedly informed that he was being terminated effective immediately. Angeline was directed that he had to leave Puerto Rico within an hour.

37. At the time of his termination Angeline was the LSS Technical Lead and had more projects and more students than any other LSS member. Angeline also had twenty-five years' relevant experience. Shortly after his termination, another LSS member offered to leave the contract in Angeline's place, but this offer was rejected.

38. Angeline's termination was at the behest of DHS and FEMA, and as the result of Defendant's illegal discrimination and retaliation, Angeline sustained economic damages and mental anguish and will continue to sustain these damages into the future.

**COUNT I**
**Unlawful Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e** *et seq.*

39. Angeline re-alleges and incorporates the allegations set forth above as though fully alleged herein.

40. At all times relevant to this complaint, Angeline was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e *et seq.*

41. At all times relevant to this complaint, DHS was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e *et seq.*

42. Angeline is a member of a protected class because he is White (Race) and Male (Sex).

43. Defendant discriminated against Angeline based on his race (White) and sex (Male) when it permitted derogatory comments, interfered with the function of his work, and ultimately terminated him.

44. Defendant took these actions against Angeline based, in whole or in part, on his race (White), sex (Male), and sexual orientation (Heterosexual).

45. Defendant did not subject other non-white, non-heterosexual, and/or non-male employees to the same discriminatory conduct.

46. As a result of Defendant's unlawful discrimination, Angeline has sustained substantial monetary and non-monetary damages.

**COUNT II**
**Unlawful Discrimination in Violation of**
**Age Discrimination in Employment Act of 1967**
**29 U.S.C. § 621** *et seq.*

47. Angeline re-alleges and incorporates the allegations set forth above as though

fully alleged herein.

48. At all times relevant to this complaint, Angeline was an "employee" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

49. At all times relevant to this complaint, DHS was an "employer" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

50. Angeline is a member of a protected class because he is over 40 (Age).

51. Defendant discriminated against Angeline based on his age (over 40) when it permitted derogatory comments, interfered with the function of his work, and ultimately terminated him.

52. Defendant took these actions against Angeline based, in whole or in part, on his age.

53. Defendant did not subject other younger employees to the same discriminatory conduct.

54. As a result of Defendant's unlawful discrimination, Angeline has sustained substantial monetary and non-monetary damages.

## COUNT III
**Hostile Work Environment in Violation of
Age Discrimination in Employment Act of 1967
29 U.S.C. § 621 *et seq.***

55. Angeline re-alleges and incorporates the allegations set forth above as though fully alleged herein.

56. At all times relevant to this complaint, Angeline was an "employee" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

57. At all times relevant to this complaint, DHS was an "employer" within the

meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

58. Angeline is a member of a protected class because he is over 40 (Age).

59. Angeline was subjected to unwelcome harassment when Defendant employees made discriminatory comments about him to customers, interfered with his work performance, and ultimately terminated him.

60. Angeline was harassed, at least in part, because of his age (over 40).

61. Defendant's harassment was severe and pervasive was severe and pervasive enough to affect a term, condition, or privilege of Angeline's employment.

62. Defendant knew of or actively engaged in the harassment of Angeline and failed to act to prevent it.

63. As a result of Defendant's unlawful harassment, Angeline has sustained substantial monetary and non-monetary damages.

## COUNT IV
### Hostile Work Environment in Violation of
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq.*

64. Angeline re-alleges and incorporates the allegations set forth above as though fully alleged herein.

65. At all times relevant to this complaint, Angeline was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e *et seq.*

66. At all times relevant to this complaint, DHS was an "employer" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

67. At all times relevant to this complaint, FEMA was an "employer" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

68. Angeline is a member of a protected class because he is White (Race), Male

(Sex), heterosexual (Sexual Orientation), and over 40 (Age).

69. Angeline was subjected to unwelcome harassment when Defendant employees made discriminatory comments about him to customers, interfered with his work performance, and ultimately terminated him.

70. Angeline was harassed, at least in part, because of his race (White), sex (Male), and sexual orientation (Heterosexual).

71. Defendant's harassment was severe and pervasive was severe and pervasive enough to affect a term, condition, or privilege of Angeline's employment.

72. Defendant knew of or actively engaged in the harassment of Angeline and failed to act to prevent it.

73. As a result of Defendant's unlawful harassment, Angeline has sustained substantial monetary and non-monetary damages.

## COUNT V
### Retaliation in Violation of
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq.*

74. Angeline re-alleges and incorporates the allegations set forth above as though fully alleged herein.

75. At all times relevant to this complaint, Angeline was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e *et seq.*

76. At all times relevant to this complaint, DHS was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e *et seq.*

77. Angeline engaged in protected activity on or about May 17, 2019, when he informed Aldarondo of his intent to file a complaint of discrimination.

78. Defendant retaliated against Angeline by pressuring ATCS and Novaces to

terminate him in response to his protected activity.

## COUNT VI
### Retaliation in Violation of
### Age Discrimination in Employment Act of 1967
### 29 U.S.C. § 621 *et seq.*

79. Angeline re-alleges and incorporates the allegations set forth above as though fully alleged herein.

80. At all times relevant to this complaint, Angeline was an "employee" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

81. At all times relevant to this complaint, DHS was an "employer" within the meaning of the ADEA, 29 U.S.C. § 621 *et seq.*

82. Angeline engaged in protected activity on or about May 17, 2019, when he informed Aldarondo of his intent to file a complaint of discrimination.

83. Defendant retaliated against Angeline by pressuring ATCS and Novaces to terminate him in response to his protected activity.

## PRAYER FOR RELIEF

Based on the foregoing, Angeline respectfully requests that he be awarded the following relief against Defendant as follows:

a. Judgment against Defendant in an amount of any wages, salary, employment benefits, or other compensation denied or lost to Angeline, including economic damages, liquidated damages, and compensatory damages to be determined at trial;

b. Re-employment, reinstatement, promotion, front pay, or other equitable relief;

c. Pre-judgment interest;

d. Interest due on unpaid wages;

e. A reasonable attorney's fee and costs of this litigation;

f.  Reasonable expert witness fees; and

g.  Any other relief that this Honorable Court deems just and proper to award.

## DEMAND FOR JURY TRIAL

Angeline demands a trial by jury for any and all issues proper to be so tried.

                      Respectfully submitted,

                      /s/ Nicholas Woodfield
                      R. Scott Oswald, DC Bar 418859
                      Nicholas Woodfield, DC Bar 471801
                      The Employment Law Group, P.C.
                      1717 K St. NW, Suite 1110
                      Washington, DC 20006-5345
                      (202) 261-2812
                      (202) 261-2835 (facsimile)
                      soswald@employmentlawgroup.com
                      nwoodfield@employmentlawgroup.com
                      *Counsel for Plaintiff Barry Angeline*